IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-961-KHR

HERLINDA MARIE GUERRA DE LA CRUZ,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Kelly H. Rankin

    This action comes before the court[1] pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), for review of the Commissioner of Social Security (the "Commissioner" or "Defendant")'s final decision denying Herlinda Marie Guerra de la Cruz's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The court has carefully considered the Complaint, Plaintiff's Opening Brief (filed July 31, 2017) (Doc. 17), Defendant's Response Brief (filed August 21, 2017) (Doc. 18), Plaintiff's Reply (filed August 30, 2017) (Doc. 19), the entire case file, the Social Security administrative record ("AR"), and the applicable law. Oral argument would not materially assist the court. For the following reasons, the court affirms the Commissioner's decision.

---

[1] When Plaintiff filed her Complaint, the case was assigned to Senior District Judge Robert E. Blackburn. On June 29, 2017, the parties consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636. Doc. 15. On August 31, 2017, the case was reassigned to Magistrate Judge Craig B. Shaffer. Doc. 20. After Judge Shaffer became unavailable, the case was reassigned to the undersigned on November 8, 2017. Doc. 21.

## I. BACKGROUND

On October 25, 2013, Plaintiff filed an application for DIB and SSI claiming disability since March 2011 due to migraines, back pain, fibromyalgia, suicidalness, and depression. AR 164, 168, 208. She was 40 years old at the time. Her application was denied administratively. AR 116, 121 (May 23, 2014 notices). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). Her case was assigned to ALJ Rebecca LaRiccia. The Commissioner's regulations define a five-step process for ALJs to determine whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*Wilson v. Astrue,* No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011) (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R § 416.920;[2] *Williams v. Bowen,* 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's

---

[2] "Part 404 of Title 20 of the Code of Federal Regulations … contain[s] the Commissioner's regulations relating to disability insurance benefits[;] identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits." *Wilson,* 2011 WL 97234 at n. 2.

regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at step three with no need to proceed further in the 5-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step"). Between the third and fourth steps, the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). The claimant has the burden of proof in steps one through four. The Commissioner bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ followed the five-step process in her decision of November 20, 2015. AR 15-28. At step one, the ALJ found Plaintiff had no substantial gainful employment since March 10, 2011, and at step two found she had several conditions constituting severe impairments: "migraines; degenerative disc disease; fibromyalgia; affect[ive] disorder; anxiety disorder; and substance addiction disorder." AR 17. The ALJ thus found Plaintiff had severe impairments in each of the areas she claimed and also a substance addiction disorder that Plaintiff had not asserted. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal any Listings. AR 18-20. The ALJ then found Plaintiff had an RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, crawl; never work an unprotected heights or around dangerous machinery, never do driving; is able to understand, remember and carry out work of limited complexity that can be learned in three months or less, with occasional interaction with coworkers, supervisors, and the general public.

AR 20. In finding Plaintiff's RFC, the ALJ analyzed Plaintiff's hearing testimony, the testimony of Plaintiff's mental health therapist or case manager Caitlin Minino, the Plaintiff's application questionnaires, treatment records, the opinion of consulting neurologist Peter Quintero, M.D., the opinions of consulting psychologist Martin Wong, Ph.D.; the opinions of state agency medical

3

consultants Gayle Frommelt, Ph.D., and Paul Barrett, M.D.; the Plaintiff's activities of daily living, the opinions of Plaintiff's treating physicians and other care providers, and evidence Plaintiff had been noncompliant with care. AR 20-26. The ALJ explained the relative weights she gave to each of the opinions and why.

At steps four and five, the ALJ found Plaintiff unable to perform any past work but able to adjust to other work available in significant numbers in the national economy. AR 26-27. The ALJ thus found Plaintiff was not disabled and denied her application. The Appeals Council denied Plaintiff's appeal on February 13, 2017. AR 3-7. The ALJ's decision then became the final decision of the Commissioner. *See, e.g.,* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481. Plaintiff timely filed her complaint on April 19, 2017. Doc. 1. As the "district court of the United States for the judicial district in which the plaintiff resides," this court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. LEGAL STANDARD

In reviewing the Commissioner's final decision,

> [o]ur review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill,* 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotation marks and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin,* 756 F.3d 1171, 1175 (10th Cir. 2014)). *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive").

Accordingly, the court may not reverse an ALJ because the court may have reached a different result based on the record; the question is instead whether there is substantial evidence

4

showing the ALJ's decision was justified. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "We review only the *sufficiency* of the evidence, not its weight .... Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee,* 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

> The Social Security Act defines a person as disabled
>
>> only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2) [and § 1382c(a)(3)(B)]. "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." … However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled.

*Wilson,* 2011 WL 97234, at *1 (quoting *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin,* 15–cv–00230–JLK, 2017 WL 219327, at

5

*8 (D. Colo. Jan. 18, 2017) (emphasis original, quoting *Washington v. Shalala,* 37 F.3d 1437, 1442 (10th Cir. 1994)).

### III. ANALYSIS

#### A. *Listing 12.04, Affective Disorders*

Plaintiff argues the ALJ erred in finding at step three she did not meet Listing 12.04 for disabling affective disorders. Defendant argues Plaintiff's argument is conclusory and fails to point to evidence showing her impairments meet the criteria of Listing 12.04. Defendant cites *Aslan v. Colvin,* 637 F. App'x 509, 509 (10th Cir. 2016) and *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). *Aslan* recognizes a claimant must cite evidence meeting the Listing's criteria. 637 F. App'x at 509. *Keyes-Zachary* recognizes appellants must adequately develop their arguments for the court to consider them. 695 F.3d at 1161. Here, it would have been helpful if Plaintiff had set out the criteria of Listing 12.04 and provided record citations in the argument as to each criteria she believes she met. However, Plaintiff does give several record citations regarding mental impairments in her statement of facts (doc. 17 at 5-6), and on reply confirmed Defendant's understanding that she relies on Paragraphs A and B of Listing 12.04. Plaintiff's Listing 12.04 argument is not so conclusory as to make review unnecessary.

At the time of the ALJ's decision, Listing 12.04 required in relevant part:

> A. Medically documented persistence, either continuous or intermittent, of … Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; * * * AND
>
> B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining

6

> social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04 (Aug. 12, 2015) (paragraph breaks and unasserted sections omitted). In addition, another regulation at the time provided a technique for evaluating mental impairments, which

> requires the ALJ to evaluate the claimant's symptoms, signs, and laboratory findings [for whether you have a medically determinable impairment] and rates the degree of functional limitation to determine the severity of the claimant's mental impairments. The ALJ must document application of the technique in the decision.

*Rose v. Colvin,* 634 F. App'x 632, 636 (10th Cir. 2015) (citations and quotation marks omitted, citing 20 C.F.R. § 404.1520a (2011); *Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008)).

Next, Plaintiff argues the ALJ erred in assessing the credibility of her complaints regarding depression and anxiety and ignored other evidence of those conditions. Plaintiff cites *Winfrey v. Chater,* 92 F. 3d 1017, 1021 (10th Cir. 1996) and *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996), which require the ALJ to consider the entire record in making credibility determinations. Plaintiff also cites a policy ruling, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements,* SSR 96-7p, 1996 WL 374186 (SSA Jul. 2, 1996)[3] which similarly requires the ALJ to consider the entire record in assessing the credibility of a claimant's subjective symptoms.

The court sees no error. Consistent with 20 C.F.R. § 404.1520a, the ALJ found Plaintiff did not meet Paragraph B because although she demonstrated medically determinable impairments of depression and anxiety, and had mild or moderate difficulties in the Paragraph B

---

[3] Plaintiff notes this Social Security Ruling was applicable at the time of the ALJ's decision.

7

criteria, she had no marked restriction or difficulties and no episodes of decompensation. AR 19. In making these findings, the ALJ discussed Plaintiff's hearing testimony regarding her daily life activities, depression and anxiety. *Id*. The ALJ also discussed the information Plaintiff provided in her Function Report, Ex. 6E (now AR 221-229). Although in this section the ALJ did not cite the other record evidence regarding Plaintiff's mental impairments, the next section of the decision shows the ALJ considered the complete record regarding Plaintiff's mental impairments. AR 20. This suffices. *See, e.g., Jones v. Colvin,* No. 14-cv-1782-KMT, 2015 WL 5579435, at *3 (D. Colo. Sept. 22, 2015).

Specifically, in determining Plaintiff's RFC the ALJ discusses Plaintiff's two mental examinations by Martin R. Wong, Ph.D. (conducted in 2011 and 2014) from which Dr. Wong "diagnosed depression, mild, circumstantial, with a corresponding Global Assessment of Functioning score of 60 [and 55, respectively], indicating moderate symptoms." AR 23 (citing Exs. 3F and 22F, now AR 312-17, 1531-37). The ALJ discusses records regarding therapy and mental health medications Plaintiff received. AR 23-24 (discussing Exs. 9F and 13F, now AR 714-722 and 1271-1329, records from Clinica Campesina Lafayette and Mental Health Partners of Boulder County). The ALJ concluded Plaintiff's "mental health record as a whole focuses more on situational issues and family stressors, including lack of finances, housing issues, and trouble with her children." AR 25. The mental health providers' notes in the cited records discuss those topics as the issues leading Plaintiff to seek therapy and substantially support the ALJ's conclusion.

The ALJ also discussed and gave great weight to the other opinion evidence regarding Plaintiff's mental impairments, namely the opinion of State agency consultant Gayle Frommelt, Ph.D. Dr. Frommelt found mild restrictions of activities of daily living, moderate difficulties in

maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. AR 82. Specifically, Dr. Frommelt concluded

> Evidence in file shows that clmt does have dx of depression and anxiety. Clmt's ADLs [activities of daily living] show that she has little to no social life, however this appears to be more related to current pain of migraines than anxiety or depression. At CE [consultative exam], clmt's mood is dysthymic and her affect is flat. She is intellectually within normal limits but is concrete thinker and has limited fund of knowledge. She does not have delusions, although sometimes does hear her father telling her things will be okay. Clmt is able to shop once a month for 2 hours and does not appear to be avoiding others. She has poor attn /conc on exam.
> MER [Medical evidence of record] shows anx/depression but largely normal mses [mental status exams]. No evidence of stroke, although clmt has migraines.

*Id.* The ALJ explained she gave great weight to this opinion under the Commissioner's policy ruling SSR 96-6p, 1996 WL 374180 (SSA July 2, 1996) because it was consistent with the objective medical evidence that Plaintiff's mental health diagnosis is managed with conservative treatment and with her reported activities of daily living. AR 24. Plaintiff does not argue the ALJ erred in relying on the professional opinions of Drs. Wong and Frommelt. The court has reviewed the entire record and finds no error in the ALJ's conclusions that their opinions are consistent with substantial, objective medical evidence in the record.

The only opinion testimony in Plaintiff's favor regarding her mental impairments was that of Ms. Minino, who opined Plaintiff was disabled because her mental impairments prevent her from consistently handling the stress of work. AR 26 (citing Ex. 24F, AR 1551-52). The ALJ discussed Ms. Minino's hearing testimony and letter and discounted this evidence because Ms. Minino is not an acceptable medical source under the Commissioner's ruling SSR 96-3p, and her opinion is inconsistent with the objective medical evidence regarding Plaintiff's mental

9

impairments discussed earlier in the ALJ's decision. AR 26. Plaintiff does not argue – and the court does not find – error in the ALJ's discounting of Ms. Minino's testimony and letter.

As for Plaintiff's credibility, the ALJ partially credited Plaintiff regarding her mental impairments. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ explained that beyond the mild or moderate limitations she found, Plaintiff's reports of disabling depression or anxiety were inconsistent with her conservative mental health treatment history, her activities of daily living, and her noncompliant drug use. AR at 24. Substantial evidence supports each finding.

First, Plaintiff asserts the ALJ erred in finding she received "little" mental health care, arguing "she has received several years of consistent treatment" for mental health. Doc. 17 Opening Brief at 10. In support, Plaintiff cites AR 1552, a September 14, 2015 letter from Ms. Minino. AR 1551-52. The document states Plaintiff was receiving four to five therapy sessions per week at the time, and "[i]nitial services began 9/2008 and continue to the present." *Id.* But Ms. Minino did not explain whether Plaintiff attended mental health therapy throughout that time period. The record reflects several long gaps. The time period at issue runs March 2011 – September 2015. The record includes mental health treatment records for several months in 2010 (the year before the time period at issue), February–May 2011, approximately June–September 2012, and May–August 2013. *See, e.g.,* AR 714-20, 1270-96, 1303-29.[4] The record thus shows

---

[4] Ms. Minino's note indicates Plaintiff received "weekly individual therapy" and "psychiatric follow ups" every 6 weeks or as needed; the other therapies were parenting-focused, family, or parent/child interaction. AR 1551. Ms. Minino testified she had known Plaintiff since approximately February or March 2015. AR 58. It is unclear whether Plaintiff consistently attended in-home therapy from that date forward (AR 60-61), but construing the testimony in favor of Plaintiff, the court will assume so.

10

active mental health care in approximately 19 of the 55 months at issue.[5] This is substantial evidence supporting the ALJ's conclusion Plaintiff had received little mental health care.

Second, Plaintiff reported doing many of the household tasks for her family, either on her own or with a friend or family. AR 51-54, 307, 313, 1532. This included shopping for her family, cooking, getting her children ready for school, and occasionally walking her children to their nearby school. She also reported gardening and church activities. *Id.* at 1532. Defendant persuasively cites *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) as finding a similar level of daily activities inconsistent with allegedly disabling pain and therefore adequate support for an adverse credibility finding.

Finally, the ALJ did not err in considering Plaintiff's non-compliance with mental health care in finding her complaints only partially credible. *Qualls v. Apfel*, 206 F.3d 1368, 1372–73 (10th Cir. 2000) (adverse credibility finding can be based on noncompliance with care); *Johnson v. Colvin*, 640 F. App'x 770, 774–75 (10th Cir. 2016) (noncompliance with prescribed treatment is a factor undermining credibility). Plaintiff on at least two occasions tested positive for mood-altering, non-prescribed drugs. AR 1544, 1511 (positive test for cocaine); AR 1178, 1186 (positive test for "benzos," which were not among her prescriptions). When Plaintiff tested positive for benzos, she was reported to have obtained pills from neighbors. Her treating physician noted Plaintiff was a "known-to-ED [emergency department] habitual analgesic seeker & user __ see records of many ED visits here." *Id.* Several care providers believed Plaintiff was drug-seeking for both pain medications and mental health medications. AR at 23 (citing Ex. 13F, AR 1310, "at one point walked out of her therapist's office because she was upset that her therapist would not prescribe[] Klonopin or Valium."). Plaintiff sought Klonopin and/or Valium

---

[5] Plaintiff may have been prescribed mental health drugs outside of the months the court notes above, but Plaintiff does not provide record citations to establish such.

11

because although she was prescribed Mirtazapine, she believed "it did not work and wasn't the right medication for her," noting "everyone in her apt complex is getting Klonopin and Valium from the mental health center and they are selling it on the streets. She knows these are what she should be taking," and "appears that she is drug seeking." AR 1310. *See also* AR 902 (October 15, 2012, emergency room doctor was concerned Plaintiff was drug seeking as to pain medications). The ALJ could consider evidence of drug seeking in assessing Plaintiff's credibility. *Poppa v. Astrue*, 569 F.3d 1167, 1171-72 (10th Cir. 2009); *Walters v. Colvin*, 604 F. App'x 643, 646 (10th Cir. 2015) (record reflecting claimant requested early refills of lorazepam was substantial evidence supporting adverse credibility finding regardless that claimant said the medication was lost or stolen).

Plaintiff asserts her mental health symptoms are not well managed by the medications she was prescribed, and the ALJ should have addressed that issue. Plaintiff does not cite authority requiring the ALJ to specifically address the efficacy of each medication a claimant received. While the ALJ did not mention them by name, the ALJ cites treatment records reflecting Plaintiff was prescribed Zoloft (sertraline) and Depakote. AR 23 (citing AR 717 (Ex. 9F at 4-5), AR 715 (Ex. 9F at 3)). The ALJ recognized Plaintiff was prescribed Prozac and at least once, Plaintiff did not comply with the prescription. AR 1273 (in April 2011, Plaintiff reported she stopped taking Prozac the week before). Plaintiff had also been noncompliant with mental health care more than once. *See e.g.,* AR 1316 (in January 2011, Plaintiff "reports being off her medication for about 3 weeks with worsening symptoms {tearfulness, isolation, mood lability, feel like 'giving up'}. [The care provider] [d]iscussed her pattern of stopping treatment when things start to get better."). She was discharged from treatment at Mental Health Partners for no shows and not returning calls. AR 1280-81. *See also Id.* at 1301-02 (provider notes "Client has a spotty

12

engagement history with MH services;" "in the past she has been able to re-gain stability and stop[ped] … services"). The record also reflects Plaintiff at times let all or many of her medications run out well before appointments. AR 377, 671, 673, 677 (out of all medications for two months). Given the inconsistency in Plaintiff's compliance with mental health prescriptions, drug seeking, and taking non-prescribed mood altering drugs, the court finds no error. Substantial evidence supports the ALJ's conclusion that Plaintiff's depression and anxiety do not meet Listing 12.04 and were not disabling.

B.   *Plaintiff's RFC*

Plaintiff argues the ALJ erred in formulating her RFC because in Plaintiff's view, the ALJ's discussion of the frequency and severity of her migraines was cursory and erroneous in finding Botox injections control Plaintiff's migraines. Plaintiff argues that when the evidence is properly considered, particularly her testimony to having "maybe three [migraines] a month" that would prevent her from working at least one day per month and would cause her to lack focus at work (Doc. 19, Reply Brief at 3-4), she must be found disabled.

The court finds no error in the ALJ's conclusion that Plaintiff's migraines do not limit her ability to work more than is reflected in the RFC. The ALJ discussed several treatment records and imaging results regarding Plaintiff's migraines. AR at 21-23 (discussing Exs. 1F, 2F, 7F, 8F, 10-12F, 15F, 18F, 19F, 23F). The ALJ concluded "[t]he claimant's pain is treated conservatively with pain medication. Imaging results are generally negative. The claimant's degree of deficit is unsupported. The claimant's migraines appear to be controlled with Botox." AR 23. Substantial evidence, including Plaintiff's statements to care providers, supports the ALJ's conclusion that Botox successfully controlled Plaintiff's migraines. AR 44, 273, 276, 279, 285, 288, 291, 1335,

1509 (on December 19, 2013 reported only two headaches since Botox on October 30), 1539 (May 8, 2014, reported one headache since Botox in April).

Plaintiff argues to the contrary her migraines are not well controlled. In her opening brief, Plaintiff cites 17 office or ER visits for migraines in 2011, 17 in 2012, seven in 2013 (January-early October), and three in 2014 (January-April). Yet during those time periods, Plaintiff had significant gaps in Botox treatments. The record indicates the injections should be given every 90 days and may take more than 1 set of injections for the patient to notice a benefit. AR 1514, 1521. Before the time period at issue, Plaintiff received Botox in April 2010. AR 270, 323, 585. The record reflects few Botox treatments between then and the end of October 2013. In April 2011, Plaintiff reported she was currently receiving Botox. AR 1010. However, in June 2011, the specialist who had given the treatments in the previous year noted Plaintiff had missed multiple appointments and "is very inconsistent with compliance." AR 302. In July 2011, Plaintiff reported she stopped receiving Botox because her specialist dropped her due to no-shows. AR 677. In October 2011, Plaintiff reported Botox had worked in the past but was discontinued. AR 1023. In June 2012, Plaintiff reported she "plans Botox shots" (AR 718) and in August 2012 reported she had recently received it but without relief. AR 1110. The next record of Botox treatments is over a year later. In September and October 2013, Plaintiff wanted her new pain clinic to provide Botox, noting she had received one series of Botox in the past. AR 1335, 1521. She resumed Botox treatments at the end of October 2013. AR 1509, 1514. *See also* AR 58 (Plaintiff testified she started Botox a year or two before the September 2015 hearing). There was also a gap in Plaintiff's Botox treatments in April 2014. AR 1544. The large number of times Plaintiff sought migraine treatment in emergency rooms and pain clinics thus does not undermine the ALJ's conclusion that Botox controls Plaintiff's migraines successfully.

In addition, it appears that during the time periods Plaintiff frequently sought treatment for migraines, she continued to take opiates despite several physicians warning her against this – among other reasons due to the rebound migraine effect of those medications. AR 309 (Ex. 2F, June 2011 State agency consultant Dr. Quintero diagnosing rebound headaches and addiction to morphine derivatives); AR 1443 (November 2011, Kristen Royer, M.D.); AR 814 (April 3, 2012, Maria Oakes, M.D., "we are trying not to treat these migraines with narcotics."); AR 1411 (June 4, 2012, Lief Sorenson, M.D., "if she desires continuation of these [opioid] medications it must be with her currently prescribing physician"); AR 1186 (February 20, 2013, Cristian Arvinte, M.D., instructed Plaintiff on discharge from hospital to take a magnesium supplement and to "STOP taking ANY OPIOID Rx for you[r] chronic migraines[.] Even if they temporarily help, Opioids lead to REBOUND MIGRAINES").[6]

Plaintiff points to a brain MRI from April 29, 2010 showing two to three white matter lesions. AR 572 ("A very small number, two to three, white matter hyperintense lesions noted within the brain. These are nonspecific and may relate to changes of chronic small vessel ischemia. This is particularly true if the patient is diabetic or hypertensive."). In Plaintiff's follow up appointment with the doctor who ordered the MRI, there are no remarks regarding the results. AR 279-81. Plaintiff also points to a CT head scan showing paranasal sinus fluid. AR 750 (CT scan of December 27, 2012). The treatment records for the December 2012 CT indicate "paranasal sinus disease with air-fluid levels" and diagnose Plaintiff as having sinusitis, which is identified as a potential infectious cause of headaches. AR 748-51. Plaintiff further argues these conditions are associated with migraines but provides no authority and no explanation of the

---

[6] A physician's assistant and CNS at Mapleton Pain Center prescribed opiates since Plaintiff started treatment there in September 2013 (AR 1553-56). The court does not have medical expertise but notes it is unclear whether they were aware of Plaintiff's overuse and rebound effect. AR 1520, 1525 (no mention of reviewing emergency department records).

15

suggested relationship. Plaintiff does not point to any treatment records or opinions indicating concern with either the 2010 lesions or the 2012 sinus fluids. In addition, two months prior to the scan showing sinusitis, Plaintiff's CT head scan was entirely normal. AR 762 (from a scan of October 26, 2012, "results of the study are: normal"). The court sees no error in the ALJ's finding that Plaintiff's imaging was largely normal.

Plaintiff further argues the ALJ erred in assessing her credibility as to her migraines. As Plaintiff notes, to determine the credibility of a claimant regarding pain the ALJ had to consider

> (1) whether [the c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling.

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). Plaintiff also notes a non-exhaustive list of factors from the Tenth Circuit on this issue:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132-33 (10th Cir. 1988). In *Huston*, the ALJ erred in not addressing any of the non-medical testimony regarding the claimant's back pain. In *Kepler*, the ALJ addressed the claimant's complaints of disabling pain, but did not discuss what evidence caused him to find those complaints not credible.

Here, the ALJ found Plaintiff showed pain-producing impairments (including migraines) that "could reasonably be expected to cause the alleged symptoms." AR 21. But in light of the conservative treatment, lack of significant physical abnormalities in scans, the opinion of the State's examining doctor, and Plaintiff's statements to her care providers, the ALJ found Plaintiff only partially credible regarding pain; to the extent her complaints were credible, the ALJ reflected them in the RFC. *Id.* at 22-26. The ALJ addresses both medical and non-medical evidence and discusses the specific evidence that caused her to find Plaintiff's claims of disabling migraine pain were not credible. This complies with the Tenth Circuit's precedents regarding analysis of claimant's subjective pain.

Plaintiff argues the ALJ erred in noting her single, positive drug test for cocaine as affecting her credibility regarding migraine pain. But as noted above, the ALJ can consider non-compliant drug use in assessing credibility. Plaintiff believes her single cocaine use is unrelated to migraines, but the positive test for cocaine is only one of several non-compliances with prescribed care. The treatment records reflect several instances in which Plaintiff ran out of her migraine and pain medications early or did not schedule appointments for refills before running out. *See, e.g.,* AR 781 (August 6, 2012 emergency room visit "likely in narcotic withdrawal" having run out of pain medication 2 or 3 days ago), 855 (reported being out of migraine and pain medications), 955 (same). In March 2010, she reported to her provider that her medications had been stolen, but she had not yet filed a police report. AR 269. The provider refilled her prescriptions except for Percocet. *Id.* In 2014, she explained to her provider that she had run out of her medications early due to a car accident, but there do not appear to be treatment records from such. In other instances, she specifically requested more narcotics on discharge from the ER and was declined because the Colorado prescription drug management program showed she

had just received a prescription a week ago. *See, e.g.,* AR 1238. The ALJ can consider evidence of prescription drug abuse in determining the credibility of a claimant's complaints of pain. *See, e.g., Cortez v. Astrue,* 848 F. Supp. 2d 1302, 1306–07 (D. Colo. 2012). In short, the record contains ample evidence of non-compliance with treating physicians' instructions to support the ALJ's finding that Plaintiff's complaints of disabling migraines were not fully credible.

Finally, although in her briefs Plaintiff argues her "migraines, other headaches and psychological symptoms" cause her to lack focus for work and marked restriction in concentration, persistence or pace (Doc. 17 at 12; Doc. 19 at 3-4), Plaintiff cites only generically to her statements to care providers. The opinion evidence that Plaintiff had only a moderate limitation in those areas is substantial support for the ALJ's conclusion that Plaintiff could perform the light work described in her RFC. AR 24 (citing opinion of consulting expert Gayle Frommelt, Ph.D.); AR 86-87 (Dr. Frommelt's assessment); *cf.,* AR 1533-34 (Dr. Wong's clinical functional assessment).

In short, the court finds substantial evidence supports the ALJ's findings regarding Plaintiff's RFC.

## IV. CONCLUSION

For each of the reasons stated above, the decision of the Commissioner is AFFIRMED. The clerk of court shall enter final judgment in favor of Defendant.

DATED at Denver, Colorado, this 8th day of June, 2018.

BY THE COURT:

s/ _____
United States Magistrate Judge